IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ROGER PENDERGRAFT,

       Plaintiff,

   Vs.                           No. 05-4047-SAC

LAYNE CHRISTENSEN CANADA, LTD.,

       Defendant.

MEMORANDUM AND ORDER

      The case comes before the court on the defendant's motion for summary judgment (Dk. 32) in this workers' compensation retaliatory discharge case. The plaintiff was employed with the defendant for just over two weeks before he was discharged. On the last shift he worked for the defendant, the plaintiff claims he hurt his wrist and burned his fingers while handling a bag of acid pellets. He did not tell anyone about the accident and injury until he had completed working the five hours left on his shift, and he then reported it to the drilling site supervisor who discharged him a few hours later. The defendant counters that the plaintiff was discharged for drinking alcohol on the job. The defendant further denies that it knew anything about the plaintiff's claimed work-related injury prior to the discharge, denies that the plaintiff injured himself on the job, and denies that the plaintiff notified his supervisors of any injury prior to the

discharge.  The defendant seeks summary judgment arguing the plaintiff's claim depends largely on his own testimony which does not rise to the clear and convincing standard of proof required to avoid summary judgment.

**SUMMARY JUDGMENT STANDARDS**

A court grants a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure if a genuine issue of material fact does not exist and if the movant is entitled to judgment as a matter of law.  The court is to determine "whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will . . . preclude summary judgment." *Id*.  There are no genuine issues for trial if the record taken as a whole would not persuade a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The court must view the evidence of record and draw all reasonable inferences in the light most favorable to the nonmovant. *Thomas v. International Business Machines*, 48 F.3d 478, 484 (10th Cir. 1995).

The initial burden is with the movant to "point to those portions of the

2

record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.), *cert. denied*, 506 U.S. 1013 (1992).  If this burden is met, the nonmovant must "set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). (citations omitted).  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id*. A party relying on only conclusory allegations cannot defeat a properly supported motion for summary judgment. *White v. York Intern. Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).  Only admissible evidence may be reviewed and considered in a summary judgment proceeding.  *See Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995).  The nonmovant's burden is more than a simple showing of "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "All material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party." *Vasquez v. Ybarra*, 150 F. Supp. 2d 1157, 1160 (D. Kan. 2001) (citing *See Gullickson v. Southwest Airlines Pilots' Ass'n*, 87 F.3d 1176, 1183 (10th Cir. 1996) (applying local rules of District of Utah)); see

3

also D.Kan. Rule 56.1(b)(1).

The summary judgment inquiry is essentially "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.  More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed. R. Civ. P. 1." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## RELEVANT SUBSTANTIVE LAW–RETALIATORY DISCHARGE

Kansas courts have extended the tort of retaliatory discharge from an employer firing in retaliation an employee for having filed a workers' compensation claim to encompass an employer firing in retaliation an injured employee "who would be likely to file statutory claims in the near future." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (citing *Ortega v. IBP, Inc.*, 255 Kan. 513, 516, 874 P.2d 1188 (1994); *see Doebele v. Sprint/United Management Co.*, 342 F.3d 1117, 1140 (10th Cir. 2003) (employee "sustained an injury for which she could or might assert a future claim for benefits."(citations omitted)).  The plaintiff's burden is to prove he was fired "based on, because of, motivated by or due to" the defendant's intent to retaliate.

4

*Foster v. Alliedsignal*, *Inc.*, 293 F.3d 1187, 1192 (10th Cir. 2002) (internal quotations and citations omitted).  The plaintiff need not prove this retaliatory intent with direct evidence and need not establish that it was the only reason behind his discharge.  *Id.*  The plaintiff, however, has the burden of proving his claim of retaliatory discharge by a preponderance of evidence that is "clear and convincing in nature.'"  *Bausman*, 252 F.3d at 1115 (quoting *Ortega v. IBP, Inc.*, 255 Kan. at 528).  Evidence is "clear" when "certain, unambiguous, and plain to the understanding."  *Id.*  Evidence is "convincing" when "reasonable and persuasive enough to cause the trier of fact to believe it."  *Id.*  While this clear-and-convincing standard of proof applies to summary judgment motions in federal court, this "is not a license to engage in a mini-trial," does not elevate the motion proceedings into a trial on affidavits and depositions, and does not authorize the court to assume jury functions.  *Foster*, 293 F.3d at 1195.

Not unlike employment discrimination cases, retaliatory discharge cases typically rely on circumstantial evidence, not direct evidence, to prove the employer's unlawful intent for discharging an employee.  *Foster*, 293 F.3d at 1192.  Consequently, "Kansas appellate courts have adopted the burden-shifting analysis of discrimination and free speech cases for use in workers compensation discharge cases."  *Gonzalez-Centeno v. North Cent. Kansas Regional Juvenile Detention*

*Facility*, 278 Kan. 427, 437, 101 P.3d 1170 (2004) (citing *Rebarchek v. Farmers*

*Co-op. Elevator & Mercantile Ass'n*, 272 Kan. 546, 553, 35 P.3d 892 (2001)).  The

Kansas Supreme Court recently summarized this applicable analysis:

> With the burden-shifting analysis the complainant initially must present a prima facie case of being fired for exercising his or her workers compensation rights. The elements of a prima facie claim for retaliatory discharge for filing a workers compensation claim are: (1) The plaintiff filed a claim for workers compensation benefits or sustained an injury for which he or she might assert a future claim for such benefits; (2) the employer had knowledge of the plaintiff's workers compensation claim injury; (3) the employer terminated the plaintiff's employment; and (4) a causal connection existed between the protected activity or injury and the termination. 272 Kan. at 554, 35 P.3d 892.  Upon such a showing, the burden shifts to the employer to articulate a legitimate, nonretaliatory reason for terminating the employee. Once the employer discharges this obligation, the complainant must continue with the burden of proving by a preponderance of the evidence that the reasons offered by the employer were merely a pretext for wrongful termination. 272 Kan. 546, Syl. ¶ 5, 35 P.3d 892.

*Gonzalez-Centeno,* 278 Kan. at 437.  "The requisite 'causal connection' is the

unlawful intent on the part of the employer to terminate the employee because the

employee has filed a statutory claim, or has been injured and may file such a

claim."  *Bausman*, 252 F.3d at 1116.  "A causal connection may be demonstrated

by evidence such as protected conduct closely followed by adverse action."

*Hysten v. Burlington Northern Santa Fe Ry. Co.*, 372 F. Supp. 2d 1246, 1254 (D.

Kan. 2005) (citing *Connor v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th

Cir. 1997)).

Once the defendant employer offers a legitimate, non-retaliatory reason for termination, the plaintiff employee to avoid summary judgment must come forward with "'specific facts establishing a triable issue as to whether the employer's reason for discharge is a mere cover-up or pretext for retaliatory discharge.'"  *Foster*, 293 F.3d at 1194 (quoting *Bracken v. Dixon Indus., Inc.*, 272 Kan. 1272, 1276, 38 P.3d 679, 682 (2002)).  "'Although the presumption of discrimination drops out of the picture once the defendant meets its burden of production, the trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual.'"  *Foster*, 293 F.3d at 1194 (quoting *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 143 (2000) (internal quotation and citations omitted)).  "Temporal proximity is sufficient to establish the causal connection element of a prima facie case, but is not sufficient–standing alone–to raise a genuine issue of pretext."  *Hysten*, 372 F. Supp. 2d at 1254-55 (citing in part *Annett v. University of Kansas*, 371 F.3d 1233, 1241 (10th Cir. 2004)).

## STATEMENT OF UNCONTROVERTED FACTS

### *Background*

1.  Roger Pendergraft started working for Layne Christensen on May 27,

2003, and his employment ended on June 11, 2003, a period of just over two weeks.  Robert Winters, supervisor of drilling and production for Layne Christensen, hired Pendergraft based upon an employee's recommendation that Pendergraft needed a job and "had just come off of rehab."  During his brief employment, the plaintiff worked on equipment at the defendant's yard in Independence, Kansas, and then was assigned to a drilling crew working near Emporia, Kansas, on a site that was drilling for coal bed methane.

2.  Pendergraft worked the night shift, 7:00 p.m. to 7:00 a.m., at the drilling site near Emporia.  He was part of a four-man crew working this shift.  Also at this location was the site supervisor or rig manager who resided on site in a trailer and was responsible 24-7 for daily drilling operations and crew supervision.  The site supervisor was John Teichroeb.

3.  The four-man crew working the night shift consisted of Matt Bilenki, James Gross, Richard Marek and the plaintiff, Roger Pendergraft.  Matt Bilenki was the driller on the crew and served as the first-level daily supervisor of the crew.  Richard Marek  was relatively new to the crew and served as a floor hand helping out where needed but worked mainly on the floor with the driller.  Roger Pendergraft worked as a trainee/floor hand with similar responsibilities to Marek

and helped with loading ingredients into the mud pump as needed.[1]  The

configuration of the rig meant that the crew worked in fairly close proximity to

each other.  Specifically, crew members working on the drilling floor could see the

other crew members working at the mud pump.

*Alcohol Found in Plaintiff's Thermos*

4.  During the night shift on June 10, 2003, John Teichroeb, the site

supervisor, and Matt Bilenki, the driller and supervisor of that shift, smelled the

odor of alcohol coming from the plaintiff's thermos at the job site.[2]  After smelling

the odor, Teichroeb instructed Bilenki to "keep an eye" on the plaintiff and assign

---

[1]The plaintiff offers that he also spent "significant time on the mud pumps." His citations to the record do not support this statement, but they do sustain an inference that the plaintiff's job duties included sharing the responsibility for monitoring the mud pump and feeding the pump with cotton seeds, acid, and other ingredients as needed.

[2]There is some contradiction in how they discovered the odor of alcohol. Bilenki testified that Teichroeb happened to pour himself a cup of what he believed was coffee from the plaintiff's thermos. After Teichroeb said the coffee tasted different, they smelled the odor of alcohol. Marek gave an account similar to Bilenki.  Teichroeb testified that Bilenki came to him and said he smelled alcohol in the plaintiff's thermos and Teichroeb then confirmed the smell. The plaintiff does not come forward with any admissible evidence of record to controvert that his supervisors smelled alcohol in his thermos and that his thermos contained alcohol during this shift.  The contradictions in the accounts of how the smell was detected and the plaintiff's speculative arguments based on them do not generate a controverted fact over what the plaintiff's thermos contained or what Teichroeb and Bilenki smelled.

him a menial task for the rest of the shift and keep him away from jobs where he could hurt himself.  Following these instructions, Bilenki directed the plaintiff to stay near the tanks and mix mud.

5.  During regular business hours the next morning, Teichroeb spoke with the defendant's safety officer, Roger Smith, asking for advice on how to proceed with the plaintiff's discharge for having alcohol on the job site.

6.  The plaintiff testified that drinking on the job was unsafe and not tolerated by the defendant and that he knew at the time of his employment that the defendant considered this rule to be important.  Before starting work with the defendant, the plaintiff passed the required alcohol and drug tests.

*Termination*

7.  Later that same morning on June 11, 2003, Teichroeb terminated the plaintiff's employment and furnished him with bus fare home.

8.  The defendant reports employment changes on a personnel action form. After the plaintiff's termination, a personnel action form was completed by an administrative assistant in Calgary, Alberta, Canada, from information furnished from the Kansas office.  Under the heading of "Termination Information," the personnel action form reports that the reason for Pendergraft's termination was "Quit-Personal Reasons" and that Pendergraft was not eligible for rehire.  The

10

personnel action form did not report the termination as a discharge or involuntary termination which was an option likely available on this computerized form.

9.  Teichroeb testified that when he terminated the plaintiff on June 11, 2003, he explained to the plaintiff that alcohol had been found in his work thermos and that this constituted grounds for immediate dismissal under company policy.

10.  Pendergraft testified that Teichroeb terminated him without giving a reason other than saying they could not use him anymore on the rig.

*Alleged Accident and Injury*

11.  Pendergraft testified that on his last shift on June 10th around 2:00 a.m. he was injured while dumping a 100-pound bag of acid pellets into the mud pump hopper.  The bag fell pushing his right wrist against the hopper as his fingers caught on a hole in the bag.  The plaintiff further testified that some of the acid pellets entered the glove on his injured hand burning his fingers.  The plaintiff testified that he finished his shift and then told the site supervisor, John Teichroeb, that he had injured his wrist and had burned his fingers.  The plaintiff also testified that he explained to Teichroeb that he was experiencing pain and wanted injuries checked out but that they would not prevent him from working his next shift.

12.  The plaintiff testified that at the time of his discharge Teichroeb told the plaintiff to contact Robert Winters in Independence about seeing a doctor and

11

getting another work assignment.

13.  Teichroeb testified that he did not know the plaintiff had experienced any work-related injury prior to the plaintiff's termination and that he did not learn about any such injury while he was working at the Emporia site.  He further testified that Pendergraft never reported an injury on the job on the day in question or that evening.

14.  The plaintiff did not report this alleged injury to Bilenki during or after the June 10th shift and did not ask Bilenki to see a doctor.  Bilenki testified that there were no injuries during this shift.

15.  As shift supervisor, Bilenki was the first person that should have been notified of an injury on his shift.  He was responsible for completing after each shift a written tour sheet that had a payroll section listing the employees who worked the shift and reporting any injuries to employees.  At the end of the June 10th shift, Bilenki completed the tour sheet marking no injury by each crew member's name, including the plaintiff's name.

16.  The plaintiff never told his co-worker Marek of his injury on the job or of his need to see a doctor for it.

17.  The plaintiff testified that the acid bag causing his injury weighed 100 pounds.  The acid bags on the work site actually weighed 50 pounds.

18.  Both Marek and Bilenki testified that a person would notice immediately if the acid or caustic soda beads came into contact with a person's skin.  Bilenki testified they were prepared on site to deal with such a situation immediately.

19.  The plaintiff testified that he followed Teichroeb's directions and spoke with Robert Winters after returning to Independence.  The plaintiff testified that in those conversations he asked for a medical referral and about other employment opportunities but that Winters only advised Pendergraft to "hang on" while he checked on some things and to call back again.

20.  Robert Winters testified that he did not have these conversations with Pendergraft and that the plaintiff never asked Winters about seeing a doctor and never told Winters that he had been hurt on the job.

21.  Two or three days after his discharge, Pendergraft returned to the defendant's field office and met with Brian Gibbs, the operations manager for the defendant's energy division.  During their conversation, Pendergraft did not mention any injury sustained at work.

22.  At some point during the summer of 2003, the plaintiff went to a doctor complaining of an injury to his right wrist and hand.  The plaintiff submits a letter dated August 12, 2003, from Kimball Stacey, M.D., which includes the physician's

comment that the plaintiff has "sustained a moderate to severe sprain of his right wrist along with an 2nd degree acid burn to the first two digits of his right hand."

23.  Pendergraft filed a claim for workers' compensation benefits based on an injury to his right wrist and hand.  The plaintiff testified about his injury at the workers' compensation hearing.

### Other Alcohol-Related Incidents on the Job

24.  Other members of the plaintiff's crew, Bilenki and Marek, testified about witnessing several other work-related incidents that indicated the plaintiff was under the influence of alcohol or had been drinking during work hours.  They testified that Pendergraft smelled of alcohol while working and his behavior suggested he was under the influence.  Marek observed that in the latter part of a shift, Pendergraft would stumble and appear more unstable, and the odor of alcohol on him would be stronger.[3]

---

[3]The plaintiff purports to controvert these facts with only the allegation that he never drank on the job.  The plaintiff does not cite any testimony or affidavit by him or any other competent witness in support of this bare allegation.  What the plaintiff cites from the record does not prove that he did not drink on the job.  That an applicant agrees with the employer's drug and alcohol policy and passes a pre-employment screen for the use of these substances is evidence that the applicant met these conditions for employment.  One could argue from this an inference that the applicant as an employee would not violate the policy.  It is quite another thing to contend, as the plaintiff purports, that this inference is reasonable proof that the employee actually did not violate the policy when others have testified that they witnessed the employee violating the policy and when the employee offers nothing

## ANALYSIS AND HOLDING

### *Prima Facie Case*

The defendant first makes a broadside attack on the plaintiff's credibility[4] pointing out the several prima facie elements–the plaintiff's injury, the defendant's knowledge of the injury, and the causal connection–for which the plaintiff has no evidence other than his own testimony.  The defendant emphasizes that the plaintiff's co-workers and supervisors, all of whom are no longer employed by the defendant, have testified that the plaintiff was not injured on the job and that they did not know of the plaintiff's claimed injury prior to his discharge.  The defendant urges the court to use the enhanced burden of proof governing retaliatory discharge claims as license to find that the plaintiff's

---

of his own testimony or averments denying the policy violations.  Indeed, the plaintiff's citations do not directly or effectively controvert the testimony of Bilenki and Marek regarding specific events, incidents, and observations about the odor of alcohol and impaired behavior associated with the plaintiff.  Finally, on a related point, the plaintiff testified that he has "never had an alcohol problem" but that he has had problems coping with other stressors in his life.  The defendant has furnished the court with medical records that document the plaintiff's serious and repeated problems with alcohol abuse. The court will have these medical records sealed and retained as part of the summary judgment record.

[4]The defendant argues the plaintiff has demonstrated a lack of veracity as shown in his testimony denying a problem with alcohol abuse and the medical evidence proving otherwise.

testimony falls short of the clear and convincing standard of proof.[5]

The plaintiff first responds that medical records, employment records, and the testimony of other witnesses support and buttress his testimony. The summary judgment record, however, does not sustain the plaintiff's response. The physician's letter simply does not prove independent of the plaintiff's testimony that he was injured on the job prior to his discharge. Nor is there any documentary evidence or testimony from any other witness that supports the plaintiff's testimony that he was injured on the job and then notified the defendant of injury prior to his discharge.

The plaintiff's credibility is plainly called into question by the serious conflict between his testimony denying alcohol abuse problems and the medical

---

[5]The defendant quotes the following from this court's prior decision in *Kidwell v. Board of County Commissioners of Shawnee County*, 40 F. Supp. 2d 1201, 1222 n.7 (D. Kan. 1998), *aff'd*, 189 F.3d 478 (10th Cir.), *cert. denied*, 528 U.S. 1064 (1999):

> "For the evidence to be clear and convincing, 'the witnesses to a fact must be found to be credible; the facts to which the witnesses testify must be distinctly remembered; the details in connection with the transaction must be narrated exactly and in order; the testimony must be clear, direct and weighty; and the witnesses must be lacking in confusion as to the facts at issue.' *Modern Air Conditioning, Inc. v. Cinderella Homes, Inc.*, 226 Kan. 70, 78, 596 P.2d 816 (1979) (citations omitted)."

evidence showing otherwise.[6]  In addition, the plaintiff's testimony about the

accident, injury, and notice to the defendant is not only contradicted by the

testimony given by all other witness on these points but also is not supported by

the defendant's employment records or procedures or by the inferences to be

reasonably drawn from his own actions and those of his co-workers and

supervisors.

Though working in close proximity to each other on the rig, no other

member of the plaintiff's crew saw or heard about the claimed accident and injury

before the plaintiff's discharge.  The plaintiff testified in his deposition that the

accident happened around 2:00 a.m. on June 19, 2003, and involved a 100-pound

bag of acid pellets.[7]  The plaintiff worked the remaining five hours of his shift

---

[6]The plaintiff believes the defendant's position is patently absurd that his credibility on all matters is undermined by his testimony brushing aside any problems with alcohol abuse and the medical records plainly establishing a serious problem.  What the plaintiff fails to acknowledge is that his denial of alcohol problems is closely related to his denial here that he was discharged for using alcohol.

[7]While the plaintiff admits in this summary judgment proceeding that his employment with the defendant was from May 27, 2003, to June 11, 2003, and while he has always claimed that he was injured on his last day of work, he told his physician in August of 2003 that he was injured on June 17, 2003, in testimony in the workers' compensation hearing in November of 2003 he said the injury occurred on June 19, 2003, and in other pleadings filed in this case he has alleged the injury occurred on June 19, 2003.

without telling anyone about the accident and injury.  When acid pellets contact the skin, a person will notice this immediately, and the crew is prepared to offer prompt first-aid treatment.  The bags of acid pellets used at the drilling site weighed fifty pounds, not one-hundred pounds.  The plaintiff does not cite any testimony showing he asked for or personally administered any first-aid treatment to the acid burn while at the drilling site.  The plaintiff admits that he did not notify his crew supervisor, Matt Bilenki, of any work-related injury, though his crew supervisor was the first person he should have notified.  Matt Bilenki completed the written tour sheet for the shift in question and reported no injuries.

Instead of seeking immediate treatment for the acid burn and notifying his crew supervisor of the injury, the plaintiff says he waited until his shift was over and then told only the site supervisor, John Teichroeb, that he had injured his wrist and burned his fingers during the shift.  Though told that both were causing the plaintiff some pain and that the plaintiff wanted them to be checked out, the plaintiff testified that Teichroeb did nothing else at this point but tell the plaintiff to go back to his motel room and wait.  The plaintiff also testified he indicated to Teichroeb that these conditions were not so serious as to keep him from working his next shift.  Of course, Teichroeb has testified the plaintiff never told him any of these things.

The evidence is that for each shift the plaintiff rode with fellow crew members in a truck from the motel to the drilling site and back.  Bilenki and Marek testified that the plaintiff never mentioned any accident or injury prior to the plaintiff's discharge, and the plaintiff does not controvert this testimony.  The plaintiff was not discharged until several hours after his shift ended.  The plaintiff's apparent position is that he was injured, in pain and needing medical treatment for a wrist injury and acid burn to his fingers but said nothing about this to his fellow crew members on their truck ride back to the motel.

The plaintiff has testified that several days after his discharge he spoke with Robert Winters, the defendant's supervisor of drilling and production, and repeatedly asked for a medical referral for his work-related injury.  In his summary judgment response, the plaintiff now concedes that he never reported the injury to Winters nor asked Winters to see a doctor.  (Dk. 38, p. 21, ¶ 61).  Winters testified that the plaintiff never spoke with him about an injury and never asked for a medical referral.  Winters further testified that if the plaintiff had indicated a work-related accident, he would have contacted the drilling site and if the plaintiff had asked for a medical referral he would have taken him to the medical clinic.

It is uncontroverted that two or three days after his discharge, the plaintiff met with Brian Gibbs, the operations manager for the defendant's energy

19

division, and never mentioned any injury sustained at work.  Gibbs testified that

the plaintiff telephoned him a couple more times to ask about getting his job back.

Gibbs testified that the plaintiff never mentioned any injury during those

conversations and that if he had then Gibbs would have written a report and

arranged for immediate treatment.  The plaintiff does not controvert Gibbs'

testimony.

   The only medical evidence of an injury included in the summary

judgment record is a letter dated August 12, 2003, written by Dr. Kimball Stacey

indicating the plaintiff was examined that day as a second opinion.  The plaintiff

offers no other testimony or evidence indicating when he first sought medical

treatment for a wrist injury and burns.  Based on the summary judgment record, the

plaintiff apparently now abandons his testimony with regards to contacting Robert

Winters about the injury and the need for medical treatment.

   The plaintiff has not changed his position that he informed John

Teichroeb of his work-related injury hours before his discharge.  The plaintiff's

testimony is his only proof that he told anyone of an injury prior to his discharge.

All other witnesses testified that they had no personal knowledge of the plaintiff

being injured on his last shift and that the plaintiff never informed them of an

injury.  Contemporary employment records and the absence of them contradict the

plaintiff's testimony about an injury and notice.

As for the element of a causal connection, if the plaintiff's testimony on the injury and on notice being given to Teichroeb is accepted as clear and convincing proof, then this testimony would establish a temporal proximity. As discussed above, there are serious credibility issues with the plaintiff's testimony in this regard. The causal nexus is further strained by some leaps in the plaintiff's theory. The plaintiff's testimony is that Teichroeb knew only that the plaintiff had hurt his wrist and burned his fingers, that the injury was causing some pain requiring medical treatment, but that the plaintiff considered the injury to be so minor as to not interfere with his ability to work the next shift. According to the plaintiff, Teichroeb did not ask any additional questions about how or when the accident occurred, whether the plaintiff had reported the accident to anyone else, whether anyone else had seen it, or the extent of what appeared to be a minor injury.[8] Teichroeb's only response was to instruct the plaintiff to return to his motel room and wait for further instructions. Rather than learn any more details about an accident and injury occurring at a work site, Teichroeb then fired the plaintiff just a few hours later without offering the plaintiff any substantive reason

_____

[8]The summary judgment record is replete with testimony from several witnesses, including Teichroeb, indicating that some work on the drilling site was physically demanding and posed certain safety risks.

21

for the discharge.  The plaintiff's account of how Teichroeb handled the plaintiff's report of a minor injury is filled with gaps bordering on the implausible.

As laid out above, the plaintiff's prima facie case turns entirely on his own testimony that is completely contradicted by other witnesses all of whom are no longer employed by the defendant, that is mistaken as to dates, names and weights, that lacks any support in any records prepared contemporary to the events, and that includes inferences about reactions and behavior which would be unusual, if not unreasonable, under the circumstances.  These numerous shortcomings in the quality of the plaintiff's proof and arguments suggest sufficient doubt about the plaintiff's ability to prove a prima facie case that a court would be justified in granting summary judgment on this ground.  Nonetheless, the court chooses the more cautious and prudent path and will focus its ruling on the plaintiff's lack of sufficient proof for pretext.

*Pretext*

The defendant has articulated a legitimate, non-retaliatory reason for the plaintiff's discharge.  His supervisors smelled what they believed was alcohol in the plaintiff's thermos at work.  The plaintiff must now present specific facts that establish a triable issue on whether the defendant's articulated reason is a mere cover-up or pretext for retaliatory discharge.  The temporal proximity between the

discharge and the injury, by itself, does not create a triable issue for pretext.  The

plaintiff must show that the defendant's stated reason for firing the plaintiff "was

so inconsistent, implausible, incoherent, or contradictory that it is unworthy of

belief."  *Miller v. Automobile Club Of New Mexico, Inc.*, 420 F.3d 1098, 1124

(10th Cir. 2005) (quotation omitted).   Based on the plaintiff's tenuous evidence of

a prima facie case and his failure to come forward with evidence from which a

reasonable jury could infer a retaliatory intent from the quality and quantity of

evidence required under Kansas law, the court will grant summary judgment to the

defendant on this ground.

            The plaintiff does not counter the defendant's showing with additional

evidence to prove the defendant's stated rationale for the discharge was pretextual.

As stated earlier, the plaintiff has not effectively controverted that his work

thermos contained alcohol on the June 10th shift and that his supervisors correctly

detected the odor.  There is no dispute in the testimony that during the June 10th

shift, Teichroeb and Bilenki smelled alcohol in a thermos which Bilenki identifed

as belonging to the plaintiff.  *See supra* n. 2.  Bilenki testified that only the plaintiff

brought a thermos to the site.  The plaintiff offers no evidence to controvert the

defendant's facts that the thermos belonged to him or that it contained alcohol.

The plaintiff does not dispute that the defendant's policy justified immediate

dismissal for having alcohol in his work thermos.

The plaintiff challenges Teichroeb's judgment in not confronting the plaintiff immediately, in letting the plaintiff to complete his shift, in not removing the plaintiff's thermos from the site, and in not ordering a drug test. Though certainly legitimate questions, the plaintiff is unable to show that Teichroeb's exercise of discretion in this regard was so unreasonable, irregular, implausible or contrary to company policy as to sustain an inference that Teichroeb did not discharge the plaintiff because he honestly believed the plaintiff had violated the company's alcohol policy. Because the plaintiff shared a ride to the remote drilling site with the rest of his crew, his ride back to the motel room was not available until after his shift ended. Under this circumstance, Teichroeb chose to restrict the plaintiff's working activities by directing Bilenki to watch out for the plaintiff and assign him menial jobs where he could not hurt himself. Teichroeb's decision to leave the thermos in the drilling house may have been poor judgment, but it is not material evidence of pretext here. In the absence of an employment policy requiring a drug test under the circumstances, Teichroeb acted quite reasonably in relying on what he had personally observed and in not taking on the additional burden and expense of a drug test.

The plaintiff next questions why Teichroeb waited until this particular

24

shift to discipline the plaintiff for his use of alcohol, as Marek and Bilenki testified

that they had witnessed other instances when the plaintiff appeared to be under the

influence at work.  The plaintiff pointedly asks why he was not discharged or

disciplined for these prior instances and contends that Teichroeb's delay in

responding indicates another motive behind his discharge.  The court finds little

substance to this argument.  The plaintiff was employed with the defendant for less

than three weeks and worked at least several days at an equipment yard before his

assignment to a drilling site.  While Marek and Bilenki had witnessed instances

when the plaintiff appeared to be under the influence, the plaintiff cites nothing of

record indicating they had reported all of their suspicions to Teichroeb prior to the

discovery of alcohol in the plaintiff's thermos.   The deposition testimony of

Bilenki and Marek suggests that they told Teichroeb only of the plaintiff's driving

incident that occurred before one shift.  Teichroeb testified that prior to his

discovery of the plaintiff's thermos, his only knowledge of an alcohol-related

incident was a report from the plaintiff's roommate who worked the opposite shift.

The roommate reported that on the day the plaintiff had called in sick he had seen

the plaintiff drinking beer in the motel room.  Teichroeb explained that his

discovery of the plaintiff's thermos was really his first experience of having

"physically seen" the plaintiff's problem with alcohol on the work site.  (Teichroeb

Dep. p. 29).  Unable to controvert any of the above testimony, the plaintiff lacks a

factual basis for arguing that Teichroeb acted unreasonably or inconsistently in not

acting on earlier reports of alcohol use other than at work and waiting to discharge

the plaintiff for the alcohol problems until he had personally witnessed a violation.

          The plaintiff's last attempt at proving pretext involves the defendant's

personnel action form that reflects the plaintiff quit for personal reasons.  This

form does conflict with Teichroeb's testimony that the plaintiff was discharged for

alcohol on the job.  The significance of this, however, is lost, because the form also

conflicts with the testimony of every other witness who had been informed of the

plaintiff's discharge by Teichroeb.  In particular, form is contrary to the testimony

of the defendant's safety officer, Roger Smith, who spoke with Teichroeb just

before the plaintiff's discharge, as well as, the testimony of Brian Gibbs, the

operations manager of the defendant's energy division, who gave advice to

Teichroeb on discharging the plaintiff.  The form itself reflects that the plaintiff

was not eligible for rehire indicating the plaintiff's "personal reasons" were not

something that the defendant would tolerate for future employment.  In sum, the

plaintiff's argued circumstances, individually and in combination, simply do not

sustain a reasonable inference of pretext.  Based on the evidence in this summary

judgment record, no reasonable jury could rationally find that the defendant's

reason for discharging the plaintiff for alcohol use was unworthy of credence and so infer that the defendant did not discharge the plaintiff in good faith for this stated reason.

IT IS THEREFORE ORDERED that the defendant's motion for summary judgment (Dk. 32) is granted.

Dated this 2nd day of August, 2006, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge